FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 26 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

VALENTI AGGIO; DOROTHY L.
AGGIO; LIVIO J. AGGIO,

                Plaintiffs - Appellants,

  v.

ESTATE OF JOSEPH AGGIO,
DECEASED,

                Defendant - Appellee,

  v.

SEQUOIA INSURANCE COMPANY, in
its capacity as liability insurer for
Defendant The Estate of Joseph Aggio,
deceased,

                Third-party-plaintiff -
Appellee,

  v.

COTATI ROD AND GUN CLUB;
MARVIN K. SOILAND, in his capacity as
trustee of the Marvin K. Soiland Family
Trust; STONY POINT ROCK QUARRY,

No. 08-16981

D.C. No. 3:04-cv-04357-PJH

MEMORANDUM [*]

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

INC.,

Third-party-defendant.

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted February 10, 2010
San Francisco, California

Before: O'SCANNLAIN, TROTT and PAEZ, Circuit Judges.

Livio, Valenti, and Dorothy Aggio (the "Aggios") appeal from the district court's grant of summary judgment to Sequoia Insurance Company ("Sequoia") in this cost recovery action brought under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607 et seq., and the California Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Code § 25300 et seq. The Aggios seek recovery of response costs and other damages from the now-closed estate of their deceased father, Joseph Aggio, in connection with the cleanup of contamination on inherited real property located in Cotati, California. Under California law, the Aggios are permitted to seek recovery from the closed estate, but only from the estate's available insurance. CAL. PROB. CODE § 554(a). Thus, the Aggios seek recovery under the terms of two nearly identical insurance policies issued to Joseph by appellee Sequoia (the

"Sequoia Policies"). We have jurisdiction under 28 U.S.C. § 1291 to review the final decision of the district court. We review de novo, *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001), and affirm.

The district court granted Sequoia's motion for summary judgment on three separate grounds. First, the court held that the Sequoia Policies' "owned property" exclusion precluded coverage for the Aggios' cleanup expenditures. Second, the district court held that the Aggios' costs of performing the voluntary environmental cleanup did not constitute "damages" as required to trigger the Sequoia Policies' insuring agreement. And third, the court held that the Sequoia Policies' "business pursuits" exception also foreclosed coverage.

As to the "owned property" exclusion, the district court held that the exclusion precludes coverage for costs incurred to clean up one's own property, even where such measures prevent potential future damage to third-party property. On appeal, the Aggios argue that under California law, where there is potential or threatened damage to the property of others, the "owned property" exclusion does not apply.

In determining the applicability of the "owned property" exclusion, the relevant inquiry is whether there is "imminent" danger of third-party contamination. *See Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 15 Cal. App. 4th

-3-

715, 758 (1993) (holding that, under an insurance policy's "owned property" exclusion, "[e]xpenses solely for cleanup of first party property [a]re not covered unless they [a]re necessary to prevent imminent damage to third party property"). None of the cases cited by the Aggios in their briefs modify this standard. *See Vann v. Travelers Cos.*, 39 Cal. App. 4th 1610, 1619 (1995) (citing *Shell Oil* and holding that "we do not believe that the standard 'owned property' exclusion should automatically defeat coverage in suits seeking 'cleanup' costs designed to prevent damage to third parties"); *Titan Corp. v. Aetna Cas. & Surety Co.*, 22 Cal. App. 4th 457, 473 (holding that the "owned property" exclusion did not apply because there was no actual or imminent threat of damage to third-party property); *see also Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1555-56 (9th Cir. 1991) (holding that the "owned property" exclusion does not bar coverage of the costs of preventing future harm to third-party property, but not addressing how imminent that threat must be to fall within the exclusion).

Thus, to prevent application of the "owned property" exclusion, the Aggios must demonstrate imminent harm to third-party property at the time of their cleanup efforts. While there is ample evidence of a potential for migration of contaminants, the record directly refutes the Aggios' contention that there was imminent danger of such migration. In fact, a 1996 environmental assessment of

the site prepared by the California Department of Toxic Substances Control ("DTSC") specifically stated: "No immediate potential hazard to health or the environment exists at the site which necessitates an emergency removal action." That same report found no contamination of groundwater and "very little potential" for any airborne transmission of the contaminants.

The Aggios cite to a 1998 remedial action work plan also prepared by the DTSC, which states that "[t]he only significant risks to the environment are risks posed to aquatic organisms in the unnamed drainage which traverses portions of [the Property]." The Aggios argue that because the unnamed drainage ditch extends onto third-party properties, contaminants in surface runoff could migrate off the property via this ditch. Whatever the merit of that hypothesis, the remedial action work plan directly contradicts the Aggios' claim that such migration was imminent. Rather, the report states that "there has been no significant impact on the water and sediment of the drainage ditch or on the aquatic and semiaquatic receptors." Thus, we find that neither of the DTSC reports reasonably supports the contention that off-site contamination was imminent. Nor have the Aggios provided any other evidence in the record demonstrating imminent harm to third-party property. Although the declaration submitted by the project manager hired by the Aggios in 1994 states that the contamination, "if not remediated, posed a

substantial threat and risk of migration," it identifies no specific evidence in the record of any imminent threat.

In sum, we hold that the Aggios have failed to create a genuine issue of material fact as to whether there was an imminent threat of contamination to third-party properties. Accordingly, we conclude that the "owned property" exclusion of the Sequoia Policies applies to the Aggios' cleanup costs and precludes recovery. As the Aggios are thereby foreclosed from recovery, we need not address the other two grounds upon which the district court denied relief.

All pending motions are dismissed as moot.

**AFFIRMED.**